## FIRST TRUST CO. OF OMAHA et al. v. ALLEN, Collector of Internal Revenue.

### No. 9384.

Circuit Court of Appeals, Eighth Circuit.

July 29, 1932.

Rehearing Denied Sept. 12, 1932.

George B. Thummel, of Omaha, Neb. (Joseph Morton and William M. Morton, both of St. Joseph, Mo., on the brief), for appellants.

W. T. Sabine, Jr., Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment in so far as it denied recovery by appellants (plaintiffs below) of a refund of certain moneys alleged to have been wrongfully collected from them by the Commissioner of Internal Revenue as part of the federal estate tax against the estate of George A. Hoagland, deceased.

The salient facts are as follows:

Plaintiffs below were the executors of the will of George A. Hoagland, deceased, and as such executors commenced the present action. After the cause was lodged in this court, the First Trust Company of Omaha was legally dissolved, and William W. Hoagland died. By leave of court, the appeal is now being prosecuted in the name of Frank P. Doolittle as sole surviving executor.

George A. Hoagland, a widower and resident of Omaha, Neb., died testate on December 6, 1923. His executors duly filed with the Commissioner of Internal Revenue a federal estate tax return showing a tax due

of $212,843.70, which was paid December 2, 1924.

After an audit and review, the Commissioner determined the real and personal property of decedent's estate to be of the values following:

Personal property, $1,297,756.64.
Real estate in Nebraska, $1,536,789.43.
Real estate in Iowa, $18,100.
Real estate in Missouri, $2,000.

The Commissioner determined a deficiency in the tax paid of $46,691.68, which sum the executors paid. Thereafter, they duly filed with the collector of internal revenue (appellee herein) a claim for refund containing several items; one of them being based on the ground that the value of the real property in the states of Nebraska, Iowa, and Missouri was erroneously included in decedent's gross estate under the provisions of the Revenue Act of 1921 (42 Stat. 227, 277–280). It was not claimed that the valuation placed upon the real property by the Commissioner was incorrect. The Commissioner rejected so much of the claim for refund as was based upon the alleged erroneous inclusion in the gross estate of the value of the real property above mentioned.

The present suit followed.

The complaint alleged the foregoing facts in substance; and also alleged that the decedent, at the time of his death, was the owner of personal property, the value of which greatly exceeded the amount of all charges against the estate and the expenses of administration.

The answer admitted substantially all the foregoing facts; but alleged in substance that in view of the statutes of the states of Nebraska and Iowa, decedent's real property in those states was, at the date of decedent's death, subject to the payment of charges against the estate, and the expenses of administration, and subject to distribution as part of the estate; that, therefore, the value of said real property was properly included in the gross estate of decedent. It was admitted in the answer that plaintiffs were entitled to recover so much of the tax as was based upon the inclusion in the gross estate of the value of the real property in Missouri.

Demurrer was interposed to the answer. The District Court sustained plaintiffs' demurrer in part, holding that the value of the real property of the decedent located in Missouri was unlawfully included in his gross estate; but overruled the demurrer in part, holding that the value of the real property located in Nebraska and Iowa was lawfully included in his gross estate.

Plaintiffs elected to stand upon their petition and demurrer, and the court thereupon granted judgment on August 13, 1931, to the plaintiffs for $280.00, with interest from September 26, 1925, on account of the erroneous inclusion in decedent's gross estate of the value of the real property situated in Missouri, and granted judgment to the defendant against plaintiffs dismissing their petition so far as it alleged that the value of the real property in Nebraska and Iowa was erroneously included.

Plaintiffs have appealed to this court from the judgment in so far as it denied them the recovery of any sum in excess of $280 with interest thereon.

The defendant has filed no cross-appeal from the judgment for $280 in favor of the plaintiffs.

The sole question presented is: Was the value of real property situate in the states of Nebraska and Iowa, belonging to the decedent, George A. Hoagland, at the time of his death, which occurred on December 6, 1923, properly included in the gross estate of said decedent for the purposes of the federal estate tax, under the provisions of section 402 (a) of the Revenue Act of 1921?

The relevant portion of the section of the statute referred to reads as follows:

"Sec. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate." 42 Stat. 278.

In the case of Crooks v. Harrelson, 282 U. S. 55, 51 S. Ct. 49, 75 L. Ed. 156 (affirming 35 F.(2d) 416), the Supreme Court had occasion to construe section 402 (a) of the Revenue Act of 1918, which is identical in language with section 402 (a) of the Revenue Act of 1921, the one here involved. In its opinion the Supreme Court said (page 58 of 282 U. S., 51 S. Ct. 49, 50, 75 L. Ed. 156): "The meaning of the provision in question, considered by itself, does not seem to us to be doubtful. The value of the interest of the decedent is not to be included unless it 'is subject to the payment of the charges against

his estate *and* the expenses of its administration'—not one or the other, but both. We find nothing in the context or in other provision of the statute which warrants the conclusion that the word 'and' was used otherwise than in its ordinary sense; and to construe the clause as though it said, 'to the payment of charges and expenses, *or either of them,'* as petitioner seems to contend, would be to add a material element to the requirement, and thereby to create, not to expound, a provision of law. Nor will it do to say that the words, *'charges* against his estate,' include expenses of administration, for plainly they are different and distinct things, generally so classified in the settlement of estates of decedents, and so regarded by Congress, as evidenced by the discriminating terms of the statute."

After citing and quoting from the case of United States v. Field, 255 U. S. 257, 41 S. Ct. 256, 65 L. Ed. 617, 18 A. L. R. 1461, the court further said (page 59 of 282 U. S., 51 S. Ct. 49, 50, 75 L. Ed. 156): "It seems clear enough that the Field Case is decisive of the question and requires us to hold that, if the value of the interest of the decedent now being considered is not subject, under the law of Missouri, to the expenses of administration, it forms no part of the gross estate for the purpose of the federal estate tax."

█ As respects the case at bar nothing further need be said as to the proper construction of section 402 (a) of the Revenue Act of 1921.

We turn to the inquiry whether, under the law of Nebraska, the value of the interest of decedent in the real property owned by him in that state at the time of his death was subject to the expenses of administration, it being conceded that it was subject to the payment of charges against the estate and subject to distribution as part of the estate.

It is conceded that at common law, real estate cannot be sold to pay expenses of administration; and that the rule of the common law is in effect in Nebraska unless changed by statute.

There are a number of statutory provisions in Nebraska having a more or less direct bearing upon the question here involved.

Section 30-233, Compiled Statutes of Nebraska 1929, contains the following language: "The estate, real or personal, given by will to any devisees or legatees, shall be held liable to the payment of the debts, expenses of administration, and family expenses, in proportion to the amount of the several devises or legacies. * * *"

Section 30-405 provides in part as follows: "* * * If the goods, chattels, rights and credits in the hands of the executor or administrator shall not be sufficient to pay the debts of the deceased, and the expenses of administration, the whole of his real estate, except the widow's dower, or so much thereof as may be necessary, may be sold for that purpose by the executor or administrator. * * *"

Section 30-406 reads: "The executor or administrator shall have a right to the possession of all the real as well as the personal estate of the deceased, and may receive the rents, issues and profits of the real estate, until the estate shall have been settled, or until delivered over, by order of the county court, to the heirs or devisees, and shall keep in good tenantable repair all houses, buildings, and fences thereon which are under his control."

Section 30-413 provides: "Any real estate so held by an executor or administrator, or which may be purchased by him as such, upon a sale on execution for the recovery of a debt due the estate, may be sold for the payment of debts or legacies and the charges of administration, in the same manner as if the deceased had died seized thereof. * * *"

Section 30-1101 provides: "When the personal estate of any deceased person, in the hands of his executors or administrators, shall be insufficient to pay all his debts, with the charges of administering his estate, such executors or administrators may sell his real estate for that purpose. * * *"

Section 30-1109 provides: "The proceeds of any real estate sold for the payment of debts, and charges of administration, as provided in this article, shall be deemed assets in the hands of the executor or administrator, in like manner as if the same had been originally part of the goods and chattels of the deceased. * * *"

No decision of the Supreme Court of the State of Nebraska has been cited as holding directly that real estate may be sold under the foregoing statutory provisions to pay expenses of administration; but the language of the statutes plainly indicates that this may be done. Furthermore, several decisions of the Supreme Court of Nebraska inferentially, at least, lead to the same conclusion.

In Alexander v. Alexander, 26 Neb. 68, 41 N. W. 1065, it was held that an heir or devisee cannot maintain an action for partition until the debts, allowances, and expenses against the estate have been paid or pro-

vided for, unless a bond be given to pay the same.

In Reckewey v. Waltemath, 28 Neb. 492, 44 N. W. 659, the court referred to the Alexander Case as follows: "In Alexander v. Alexander [26 Neb. 68], 41 N. W. 1065, this court held that an heir or devisee of an estate cannot maintain an action of distribution or partition until the debts, allowances, and expenses against the estate have been paid or provided for, unless he give a bond, with approved sureties, to pay the same. This, we think, is a correct statement of the law, as only the residue of an estate that remains after the debts and expenses against the estate have been paid will pass to the devisees or heirs."

Markle v. Markle, 120 Neb. 412, 232 N. W. 770, follows the Alexander and Reckewey Cases.

In re Miller v. Hanna, 89 Neb. 224, 131 N. W. 226, Ann. Cas. 1912C, 573, expressly recognizes that real estate in Nebraska owned by a resident who dies intestate, descends subject to the debts and funeral expenses of the decedent.

In Allen v. Henggeler (C. C. A.) 32 F. (2d) 69, the question involved was whether a widow's one-third interest in the real estate of her deceased husband was liable to the federal estate tax. This court, in discussing the character of the one-third interest of the widow, said (page 71 of 32 F.(2d): "The wife's interest in both real and personal property is subject, first, to the payment of the debts of the husband's estate, which includes the costs of administration."

As opposed to the foregoing cases, appellants cite Cooley v. Jansen, 54 Neb. 33, 74 N. W. 391; Schick v. Whitcomb, 68 Neb. 784, 94 N. W. 1023; Hughes v. Langdon, 111 Neb. 508, 196 N. W. 915, 199 N. W. 832.

In the Cooley Case, the decedent at the time of his death was seized of certain lands which were occupied as a *homestead*. The question involved was whether the administrator had the right to take possession and lease the lands. The court held in the negative and said (page 392 of 74 N. W., 54 Neb. 33): "The land in suit descended to the wife and heirs shorn of any liability for the debts of the deceased, and the administrator had no right of possession, or other right thereto or therein. * * *"

In the Schick Case, one of several joint devisees brought suit for partition against an executor and the other devisees. The time for filing claims had expired, but there had been no settlement of the estate. It was contended that the suit was premature and the Alexander case, supra, was cited. The court distinguished the case, saying (page 1026 of 94 N. W., 68 Neb. 784): "There is nothing in that case inconsistent with the views hereinbefore expressed, but we do not consider it directly in point on the precise question under discussion. There the petition contained no allegation whatever in regard to the solvency of the estate, or of the sufficiency of the personal assets to meet the charges which the statute requires to be paid or provided for before a division or partition of the estate can be had. * * * But in this case the solvency of the estate, as well as the sufficiency of the personal assets to pay the debts against it, are alleged in the petition and conclusively established by the evidence. The distinction between the two cases, to our minds, is clear."

Hughes v. Langdon, supra, involved a suit upon a guardian's bond, and the questions discussed were, who was the "person entitled to bring such action," and whether the statute of limitations had run. We fail to see that the case has any application to the one at bar.

Our conclusion on this branch of the case is, in view of the provisions of the Nebraska statutes, and in view of the holdings in the Alexander, Reckewey, Miller, and Markle Cases, supra, that the value of the interest of the decedent Hoagland in the real property owned by him in Nebraska was subject to the expenses of administration. The value of such interest, therefore, was properly included in the value of the gross estate for the purpose of the federal estate tax.

■■ The question as to the Iowa lands depends, of course, upon the Iowa statutes and the decisions of the Supreme Court of that state. It is conceded that the common law exists in Iowa except as modified by statute. The relevant statutes are found in the Code of Iowa 1924, and are as follows:

"11933. *Sale or mortgage of real estate—application.* If the personal effects are found inadequate to satisfy the debts and charges, a sufficient portion of the real estate may be ordered sold or mortgaged for that purpose, application therefor being made in the court granting administration, and only after a full statement of all the claims against the estate, and after rendering a full account of the disposition made of the personal estate."

"11969. *Expenses of funeral—allowance to widow.* As soon as the executor or ad-

ministrator is possessed of sufficient means over and above the expenses of administration, he shall pay off the charges of the last sickness and funeral of deceased, and next, any allowance made by the court for the maintenance of the widow and minor children."

"11907. [Relating to estates of absentees.] *Sale of real estate.* Such administrator may, under the orders of the court, sell and dispose of all real estate and other property owned by such absentee, and after the payment of legal costs, expenses, and claims, make distribution of the proceeds thereof to the persons entitled thereto."

We have been cited to no decision of the Supreme Court of Iowa, and have found none, passing directly upon the question whether, under the provisions of the statutes quoted, real property of a decedent in that state is subject to the payment of expenses of administration. It becomes necessary, therefore, for us to construe the statute in order to determine the controversy in the instant case.

The provisions of the Iowa Code are not so explicit as those in the Nebraska statute; nevertheless, we think they are the same in legal effect so far as concerns the question here involved.

The meaning of the word "charges" in section 11933 is of vital importance. This word is used in contradistinction to the word "debts"; and has a different and a broader meaning than the same word "charges" where it occurs in section 402 (a) of the Revenue Act of 1921. In the latter statute, the word is used in contradistinction to "expenses of administration." We think the word "charges" in the Iowa statute includes expenses of administration, and also other expenditures properly made by the administrator though not strictly expenses of administration, such as funeral expenses. Such broader meaning of the word "charges" is not unknown in probate law.

In an early case, Goodwin v. Chaffee, 4 Conn. 163, under a statute which allowed the probate court to order the sale of real estate of a decedent when the debts and charges allowed by the court exceeded the value of the personal estate, the question arose whether a sale of real estate could be ordered to pay a legacy. The court in its opinion said: "But when the personal estate has been exhausted, as in this case it was, and resort must be had to realty, it becomes an important question, whether, for the payment of a legacy, the court of probate has authority to order the sale of real estate. On this point, the case before the court must turn. For the 'debts and charges' against the estate, the law has imparted this authority; and, of consequence, imposed it on the judge as a duty; but a legacy is not a debt, nor is it a charge, within the meaning of the statute. *The latter word has, from familiar use, the precision of a technical term, and merely comprises the expenses incurred in the settlement of an estate."* (Italics ours.)

The same meaning was given to the word "charges" in the later case, Duffield, Ex'r, v. Pike, 71 Conn. 521, 42 A. 641.

In the case of Cairns v. Smith (Tex. Civ. App.) 49 S. W. 728, application had been made by the executors of a will for leave to sell real estate to pay certain legacies. Cairns died intestate as to the real estate sought to be sold. The proceeds of the property covered by the will had been paid out by the executors. The question in the case was whether the legacies provided in the will were charges upon the real property sought to be sold. The court cited the Goodwin Case, with approval as to the meaning of the word "charges," and said (page 733 of 49 S. W.): "Our statute, in prescribing the requisites of an application by an executor or administrator to sell real estate, apparently uses the term 'charges' in the same sense."

The foregoing cases lend support to our view that the word "charges" in the Iowa statute, above quoted, includes expenses of administration. There are also decisions of the Supreme Court of Iowa which, we think, are of inferential value as pointing to the same conclusion.

In the case of Conger v. Cook, 56 Iowa, 117, 8 N. W. 782, 784, the petitioner prayed for an order for the sale of real estate, alleging that the personal property was inadequate to pay the debts and expenses of administration. Demurrer was interposed to this petition. The court, in reference thereto, said (page 784 of 8 N. W., 56 Iowa, 117): "As another ground of demurrer, it is said that the petition is insufficient because it shows that there is something due the administrator as costs of administration, and the application is made in part to raise money to re-imburse the administrator, and also to pay him his compensation. The defendant contends that the real estate cannot be sold for such purpose. If this were true we do not think that it would constitute a ground of demurrer to the petition, which seeks an order of sale for the purpose of paying creditors. It was proper to grant an order of

sale, though, of course, only for a legitimate purpose, and only for the sale of so much real estate as was necessary for such purpose. The petition, if objectionable upon the ground urged, should have been assailed, we think, by a motion to strike out the objectionable part. *We do not wish to be understood as intimating that we do not think that real estate can be sold to pay the administrator's costs and compensation where the proceeds of the personal property have been exhausted in properly paying creditors.*" (Italics ours.)

Foley v. Brocksmit, 119 Iowa, 457, 93 N. W. 344, 345, 60 L. R. A. 571, 97 Am. St. Rep. 324, involved a suit by an undertaker against the administrator for funeral expenses. In its opinion the court said: "Such charges are not, strictly speaking, debts due from the deceased, but *charges* which the law out of decency imposes upon his estate. And, so far as these are reasonable in amount, they take legal priority of all such debts; as, likewise, do *the administration charges.*" (Italics ours.)

In Crapo, Ex'r, v. Armstrong, 61 Iowa, 697, 17 N. W. 41, 42, the court held that money paid for a tombstone for a decedent was a proper expenditure "as pertaining to the funeral expenses."

In the later case of Mullinnix v. Brown, 151 Iowa, 468, 131 N. W. 671, involving a similar question as well as a sale of real estate for such expense, the court said (page 674 of 131 N. W., 151 Iowa, 468): "Again, it is said that no order to sell should have been made because of lack of proof of the allowance of any claims save that for the monument which was secured upon order of court, and that there exists no authority in law for ordering a sale of real estate for the purpose of paying such claims. In this contention counsel are in error. The record does show the allowance of claims against the estate of the deceased for more than the amount of money and personal property in the hands of the administrator. Moreover, we think that real estate left by one deceased may be sold upon prior [proper] application for the payment of such debts as well as for the funeral expenses of one deceased. * * * The cost of a suitable monument for one deceased is as properly chargeable against his estate as are the funeral expenses; and that lands may be sold in the absence of a personal estate to meet such claims is entirely clear."

In the case of In re Spicer's Estate, 203 Iowa, 393, 212 N. W. 689, 690, the adminis-tratrix made report that a certain claim amounting to approximately $15,000 against the estate had been finally allowed by the Supreme Court of Iowa; and the report further stated: "That said claim and the cost of closing said estate have not yet been paid, and that as shown above there is not enough personal property out of which to pay the same."

A petition to sell real estate belonging to the estate was also filed by the administratrix. This petition stated that it was necessary for the paying off of claims against the estate "and to close the estate to sell the real estate."

A demurrer was interposed to the petition. This was overruled; and the court entered an order reciting that it was "necessary to sell the real estate * * * in order to have sufficient funds to close said estate."

An appeal was taken from the judgment ordering the sale of the real estate, and the judgment was affirmed by the Supreme Court of the State of Iowa.

The question was not directly raised whether the real estate might be sold to pay the expenses of administration, but the clear inference from the case is that such was the practice in Iowa.

In view of the foregoing, our conclusion on this branch of the case is that the lands owned by decedent in Iowa were subject to be sold for the payment of the expenses of administration, in addition to being subject to the payment of the charges against the estate, and being subject to distribution as part of the estate. It follows that the value of such lands was properly included as part of the value of the gross estate.

A further contention of appellants is that the personal property of decedent was amply sufficient to pay all debts and expenses of administration; and that, therefore, the real property in Nebraska and Iowa was not subject to the expenses of administration; and, hence, the value of the interest of decedent in such real property was not properly included in the gross estate. We think there is no merit in this contention.

The test to determine whether the value of the interest of decedent in real property shall be included in the value of his gross estate is found in the words of the statute [section 402 (a) of the Revenue Act of 1921] and not in speculative probabilities as to the

necessity for selling the real property during administration.

We think the judgment of the trial court was right, and it is affirmed.